**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | | |
|---|---|---|
| DEBORAH ELIZABETH GLAST; | § | |
| RACHEL LYNN GLAST; | § | |
| WILLIAM ELTON KUYKENDALL JR.; | § | |
| ESTATE OF BETSY JEANNE KUYKENDALL; | § | |
| JOHN MICHAEL COCHRAN; | § | |
| OTIS FIELDING COCHRAN JR.; | § | |
| MARGARET ANN CROW; | § | |
| TONY SCOTT MARTIN; | § | |
| PHILLIP BLAKELY MARTIN; | § | |
| ESTATE OF VALERIE LOUISE MARTIN; | § | |
| EDDIE LOU HIX KESTER; | § | |
| ELIZABETH W. BOYD, DIANE W. BELCHER, | § | |
| KATHERINE W. BRAUN, AND | § | |
| BEN F. WILLIAMS III, CO-TRUSTEES OF THE | § | |
| BEN F. WILLIAMS JR. LIVING TRUST; | § | |
| WHITAKER B. IRVIN SR., TRUSTEE OF THE | § | |
| TERESA W. IRVIN REVOCABLE TRUST; | § | |
| MONYA S. CUNNINGHAM, TRUSTEE OF THE | § | |
| MONYA S. CUNNINGHAM REVOCABLE LIVING | § | |
| TRUST; KAREN C. RAGNO, TRUSTEE OF THE | § | |
| 2009 CUNNINGHAM REVOCABLE TRUST; | § | |
| DEBORAH DYER GUTTING; | § | |
| THOMAS A. BECKHAM, TRUSTEE OF THE | § | |
| BECKHAM FAMILY TRUST; | § | |
| JUDITH ELLEN GERBASE; | § | |
| GEORGE ANDY LASATER; BEN REX PONDER; | § | |
| BILLIE JEAN PONDER; PENNY SUE POSEY; | § | |
| AND CAROLYN TAYLOR, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| vs. | § | **Civil Action No. 7:19-cv-00075** |
| | § | |
| RIDGE NATURAL RESOURCES, LLC; | § | **JURY DEMANDED** |
| ESPUELA LAND AND MINERALS, LLC; | § | |
| PLAINS NATURAL RESOURCES, LLC; | § | |
| PUEBLO RESOURCES, LLC F/K/A APACHE | § | |
| RESOURCES, LLC; AGAVE NATURAL | § | |
| RESOURCES, L.L.C.; RANGE ROYALTY, LLC; | § | |
| CALVIN SMAJSTRLA; MATT MORGAN, | § | |
| CHRISTOPHER HAWA; and WILSON HAWA, | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Deborah Elizabeth Glast; Rachel Lynn Glast; William Elton Kuykendall Jr.; the Estate of Betsy Jeanne Kuykendall; John Michael Cochran; Otis Fielding Cochran Jr.; Margaret Ann Crow; Tony Scott Martin; Phillip Blakely Martin; the Estate of Valerie Louise Martin; Eddie Lou Hix Kester; Elizabeth W. Boyd, Diane W. Belcher, Katherine W. Braun, and Ben F. Williams III, Co-Trustees of the Ben F. Williams Jr. Living Trust; Whitaker B. Irvin Sr., Trustee of the Teresa W. Irvin Revocable Trust; Monya S. Cunningham, Trustee of the Monya S. Cunningham Revocable Living Trust; Karen C. Ragno, Trustee of the 2009 Cunningham Revocable Trust; Deborah Dyer Gutting; Thomas A. Beckham, Trustee of the Beckham Family Trust; Judith Ellen Gerbase; George Andy Lasater; Ben Rex Ponder; Billie Jean Ponder; Penny Sue Posey; and Carolyn Taylor (collectively, "Plaintiffs") complain of Defendants Ridge Natural Resources, LLC; Espuela Land and Minerals, LLC; Plains Natural Resources, LLC; Pueblo Resources, L.L.C. f/k/a Apache Resources, L.L.C.; Agave Natural Resources, L.L.C.; Range Royalty, LLC; Calvin Smajstrla; Matt Morgan; Christopher Hawa; and Wilson Hawa (collectively, "Defendants"), as follows:

## I.

### PRELIMINARY STATEMENT

1.    This lawsuit is about a Trojan horse. Wanting to acquire valuable royalty interests quickly and cheaply, Defendants developed and/or used a legal instrument to look and feel like an industry-standard oil-and-gas lease; but rather than offering to buy royalty interests under term royalty deeds, Defendants took "royalty leases," which provided for a 25-percent royalty (in the original royalty interest). Plaintiffs, many of whom are elderly, were among the lay people solicited

by sophisticated Defendants. Plaintiffs were aware that minerals typically get developed by leasing, and they knew that 25 percent was a fair market lease-royalty percentage in the Permian Basin. Exploiting their informational asymmetry, Defendants misrepresented the nature of the instruments, leaving Plaintiffs unaware that the leases were not traditional leases – these "royalty leases" had zero bearing on whether the minerals would be developed. In reality, Defendants used their documents to enter and sack the city, seizing 75 percent of an income stream that otherwise would have been payable to Plaintiffs – a kingdom for a pittance.

2.     Defendants are limited liability companies and the attorneys and landmen who own and run them. These attorneys and landmen have substantial experience and familiarity with title instruments in the oil-and-gas industry. Plaintiffs acquired mineral and royalty interests through inheritance. They are not landmen, and they do not have law degrees. They are unfamiliar with the "bundle of sticks" analogy for real property rights, and they have no education in oil-and-gas title concepts.

3.     As an economic matter, leasing minerals is much cheaper than buying minerals. Under that basic economic truth, the oil-and-gas industry was built upon the concept of the mineral lease, which, compared to outright purchasing minerals that they would like to develop, allows companies to deploy capital across a much broader spectrum of acreage. But mineral interests are different than royalty interests. In the case of a royalty interest, the executive right – the right to lease – has been exercised or severed from the remaining incidents of mineral ownership.

4.     Fortunately for Plaintiffs, Defendants' plan has a simple but fatal flaw: a royalty interest cannot legally be leased, and any attempt to do so is invalid. Even if Defendants' instruments could be construed as conveyances under Texas law, the instruments were acquired by fraud and deception. Defendants trampled upon a variety of federal and state laws, including

racketeering and securities laws. Defendants know the difference between a lease and a term royalty deed. This lawsuit seeks to break through the charade.

## II.

### PARTIES

1.     Plaintiff Deborah Elizabeth Glast is a Texas resident.

2.     Plaintiff Rachel Lynn Glast is a Texas resident.

3.     Plaintiff William Elton Kuykendall Jr. is a Texas resident.

4.     Plaintiff Estate of Betsy Jeanne Kuykendall is an estate administered under Cause No. 10,116PC, County Court at Law No. 2, Brazos County, Texas, under which William Elton Kuykendall Jr. was appointed as Independent Executor.

5.     Plaintiff John Michael Cochran is a Texas resident.

6.     Plaintiff Otis Cochran Jr. is a Texas resident.

7.     Plaintiff Margaret Ann Crow is a South Carolina resident.

8.     Plaintiff Tony Scott Martin is a Texas resident.

9.     Plaintiff Phillip Blakely Martin is a New Mexico resident.

10.     Plaintiff Estate of Valerie Louise Martin is an estate administered under Cause No. C-1-PB-18-000096 in Probate Court No. 1 of Travis County, Texas, under which Tony Scott Martin was appointed and has qualified as Independent Executor.

11.     Plaintiff Eddie Lou Hix Kester is a California resident.

12.     Plaintiff Elizabeth W. Boyd, a co-trustee of the Ben F. Williams Jr. Living Trust, is an Arizona resident.

13.     Plaintiff Diane W. Belcher, a co-trustee of the Ben F. Williams Jr. Living Trust, is an Arizona resident.

14.     Plaintiff Katherine W. Braun, a co-trustee of the Ben F. Williams Jr. Living Trust, is an Arizona resident.

15.     Plaintiff Ben F. Williams III, a co-trustee of the Ben F. Williams Jr. Living Trust, is an Arizona resident.

16.     Plaintiff Whitaker B. Irvin Sr., Trustee of the Teresa W. Irvin Revocable Trust, is a Utah resident.

17.     Plaintiff Monya S. Cunningham, Trustee of the Monya S. Cunningham Revocable Living Trust, is a Texas resident.

18.     Plaintiff Karen Ragno, Trustee of the 2009 Cunningham Revocable Trust, is a Texas resident.

19.     Plaintiff Deborah Dyer Gutting is a Texas resident.

20.     Plaintiff Thomas A. Beckham, Trustee of the Beckham Family Trust, is an Oregon resident.

21.     Plaintiff Judith Ellen Gerbase is a Montana resident.

22.     Plaintiff George Andy Lasater is a Texas resident.

23.     Plaintiff Ben Rex Ponder is a Texas resident.

24.     Plaintiff Billie Jean Ponder is a Texas resident.

25.     Plaintiff Penny Sue Posey is a Texas resident.

26.     Plaintiff Carolyn Taylor is an Arizona resident.

27.     Defendant Ridge Natural Resources, LLC ("Ridge") is a Texas limited liability company with its principal place of business at 3195 Dowlen Rd., Suite 101-308, Beaumont, Texas 77706. Ridge may be served with process through its registered agent, InCorp Services, Inc. at 815 Brazos St., Ste. 500, Austin, Texas 78701.

28.     Defendant Espuela Land and Minerals, LLC ("Espuela") is a Texas limited liability company with its principal place of business in Kerrville, Texas. Espuela may be served with process through its registered agent, Calvin Smajstrla, at 708 Myrta St., Kerrville, Texas 78028, or where found.

29.     Defendant Plains Natural Resources, LLC ("Plains") is a Texas limited liability company with its principal place of business in San Antonio, Texas. Plains may be served with process through its registered agent, InCorp Services, Inc. at 815 Brazos St., Ste. 500, Austin, Texas 78701.

30.     Defendant Pueblo Resources, L.L.C. f/k/a Apache Resources, L.L.C. ("Pueblo") is a Texas limited liability company with its principal place of business in Texas. It may be served with process through its registered agent for service of process in Texas, Wilson Hawa, at 4825 Christina Lane, Beaumont, Texas 77706, or where found.

31.     Defendant Agave Natural Resources, L.L.C. ("Agave") is a Texas limited liability company with its principal place of business in Texas. Agave may be served with process through its registered agent for service of process in Texas, Christopher Hawa, at 4825 Christina Lane, Beaumont, Texas 77706, or where found.

32.     Defendant Range Royalty, LLC, ("Range") is a Texas limited liability company with its principal place of business in Texas. Range may be served with process through its registered agent registered agent, InCorp Services, Inc. at 815 Brazos St., Ste. 500, Austin, Texas 78701.

33.     Defendants Ridge, Espuela, Plains, Pueblo, Agave and Range are also sometimes referred to as the "Corporate Defendants."

34.     Defendant Calvin Smajstrla (a/k/a Cal Piter) is a Texas resident. He may be served at 201 Lakewood Drive, Kerrville, Texas 78028, or where found.

35.     Defendant Matt Morgan is a Texas resident. He may be served at 5150 Broadway, Suite 205, San Antonio, Texas 78209, or where found.

36.     Defendant Christopher Hawa is a Texas resident. He may be served with process 825 Christina Lane, Beaumont, Texas 77706, or where found.

37.     Defendant Wilson Hawa is a Texas resident. He may be served with process at 5170 Broadway, Suite 24, San Antonio, Texas 78209, or where found.

38.     Defendants Smajstrla, Morgan, and the Hawas are sometimes referred to as the "Individual Defendants."

### III.

### JURISDICTION & VENUE

39.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331.

40.     This Court also enjoys supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

41.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) & (2).

### IV.

### FACTS APPLICABLE TO ALL COUNTS

**A.     Plaintiffs inherit oil-and-gas interests; they are not in the oil-and-gas business.**

42.     Plaintiffs own certain mineral royalty interests, generally acquired through inheritance.

43.     Their interests consist of either nonparticipating royalty interests or mineral interests subject to oil-and-gas leases held by production or other activities. In the latter instance, the executive rights to the mineral interest have been exercised.

44.    Plaintiffs' interests are nonpossessory royalty interests.

**B.    Ridge deceptively solicits Plaintiffs to "lease" their interests.**

45.    In 2016, Ridge approached Plaintiffs with offers to "lease" their interests.

46.    In its offer letters, representative copies of which are attached as **Exhibits "A"** and **"B,"** Defendants stated, "We are interested in leasing your interest."

47.    Ridge's letters and communications use the word "lease payment," rather than "purchase price," and repeatedly used the term "lease" rather than "sell," "sale," "convey," or other terminology that would indicate a sale of royalty. The typical offer letter refers to the proposed transaction in terms of "leasing" or a "lease" approximately nine times.

48.    Ridge, in its offer letters, provided the calculations used to reach the bonus amount offered. In doing so, Ridge applied the term "Net Royalty Acres" without defining it. This led Plaintiffs to believe that Ridge was using the same unit of measurement for calculating bonus that is customarily used in negotiations for traditional oil-and-gas leases – i.e., "net mineral acres."

49.    Ridge's offer letters were signed by "Cal Piter," believed to be a pseudonym of Defendant Smajstrla.

50.    Upon information and belief, the quantity of "Net Royalty Acres" on which Plaintiffs were paid was calculated by multiplying the net revenue interest in the land by the number of gross acres. This definition departs from the meaning commonly used and understood by those in the legitimate business of purchasing and acquiring mineral and royalty interests. Under the Defendants' calculation, the quantity of net royalty acres upon which their payments to Plaintiffs were based understated Plaintiffs' interests by a magnitude of eight.

51.    The form of the royalty lease document enclosed with the offer letters is structured and has the general appearance of a traditional form oil-and-gas lease.

52.     The lease form provides that it will remain in force for a "primary term" and "for as long thereafter as oil or gas or other substances covered hereby are produced in paying quantities from the leased premises or from lands pooled therewith."

53.     The lease provides for a one-fourth (25%) royalty on production from the land described in the lease.

54.     The lease includes a proportionate-reduction provision specifying that if the lessor owns less than the full mineral estate, the royalties payable are to be reduced to the proportion that the lessor's interest bears to the full mineral interest.

55.     The lease refers to the "obligations" of Defendant Ridge arising with respect to the interest subject to the lease. But of course, Ridge has no obligations.

56.     The lease even authorizes Ridge to discharge unpaid taxes, mortgages, or liens existing or assessed against the leased premises and states that Ridge may thereafter be reimbursed out of royalties "or shut-in royalties otherwise payable to Lessor hereunder."

57.     In other words, the lease mimics an oil-and-gas lease, but it is not one because Ridge has no obligations to do anything – nor could it if it wanted to.

58.     None of the Corporate Defendants have a P-5 Organization Report or financial security on file with the Texas Railroad Commission and, therefore, none are authorized to conduct operations within the Commission's jurisdiction.

**C.     Even the Corporate Defendants' names are deceptive.**

59.     Defendants set up a web of related shell companies formed and operated for the sole purpose of perpetrating the fraudulent scheme that gave rise to this lawsuit. Many of these companies are given names confusingly similar to large, reputable oil-and-gas companies to confuse the victims of the fraudulent scheme by creating a sense of legitimacy that would

otherwise be lacking.

60.     For example, the first lessee, Ridge, organized under a name — Ridge Natural Resources — that is intended to be confusingly similar to Oak Ridge Natural Resources with substantial operations across the Western and Southwestern United States.

61.     Ridge also has no affiliation with Ridge Oil Company. Ridge Oil Company, in Texas alone, since 2000, has filed for 84 well permits.

62.     Ridge also has no affiliation with Ridge Petroleum Inc. Ridge Petroleum Inc., in Texas alone, has filed for 21 well permits.

63.     Defendants, by contrast, have filed for no well permits.

64.     Ridge also has no affiliation with Sandridge Energy, Inc., an exploration-and-production company publicly traded on the New York Stock Exchange.

65.     By way of another example, Plains, which received assignments of interests from Ridge and has participated directly as a lessee under other similar instruments, has no affiliation with Plains Exploration & Production Company or Plains Resources, Inc. Plains Exploration & Production Company, in Texas alone, since 2010, has filed for at least 354 well permits, and Plains Resources, Inc., in Texas alone, has filed for at least 56 well permits.

66.     Plains also has no affiliation with midstream industry companies such as Plains All American Pipeline, L.P. and Plains Marketing, L.P., which have a long and active history in the Permian Basin and routinely issue division orders and royalty payments to royalty owners under arrangements with well operators.

67.     Likewise, Range, which received assignments of interests from Ridge, has no affiliation with Range Resources Corporation, an exploration-and-production company publicly traded on the New York Stock Exchange based in Fort Worth, Texas.

68.     Defendants have secured similar instruments in the name of Apache Resources, L.L.C., which subsequently changed its name to Pueblo Resources, L.L.C. Apache Resources, L.L.C. was designed to mimic Apache Corporation, an oil-and-gas exploration-and-production company with a market capitalization of over 18 billion dollars.

D.     **The scams worked; Plaintiffs signed up for the Royalty Leases.**

69.     Defendants obtained certain Oil & Gas Royalty Leases from Plaintiffs. Those instruments (the "Royalty Leases") name Defendant Ridge as lessee and are as follows:

- Oil and Gas Royalty Lease from Plaintiff Deborah Elizabeth Glast to Defendant Ridge, dated November 1, 2016, executed December 20, 2016, recorded as Instrument No. 17-0084, Andrews County Official Public Records, a copy of which is attached as **Exhibit "C."**

- Oil and Gas Royalty Lease from Plaintiff Rachel Lynn Glast to Defendant Ridge, dated November 1, 2016, executed December 24, 2016, recorded as Instrument No. 17-0421, Andrews County Official Public Records, a copy of which is attached as **Exhibit "D."**

- Oil and Gas Royalty Lease from Plaintiff William Elton Kuykendall Jr. and from Plaintiff Estate of Betsy Jeanne Kuykendall to Defendant Ridge, dated January 1, 2016, executed February 22, 2016, recorded as Instrument No. 16-1014, Andrews County Official Public Records, a copy of which is attached as **Exhibit "E,"** together with a Correction Oil and Gas Royalty Lease from Plaintiff William Elton Kuykendall Jr. and Plaintiff Estate of Betsy Jeanne Kuykendall to Defendant Ridge, dated January 1, 2016, executed April 6, 2016,

recorded as Instrument No. 16-1398, Andrews County Official Public Records, a copy of which is attached as **Exhibit "F"** (the "Kuykendall Leases").

- Oil and Gas Royalty Lease from Plaintiff John Michael Cochran to Defendant Ridge, dated January 1, 2016, executed April 26, 2016, recorded as Instrument No. 2016-1347, Loving County Official Public Records, a copy of which is attached as **Exhibit "G"** (the "J. Cochran Lease").

- Oil and Gas Royalty Lease from Plaintiff Otis Fielding Cochran Jr. to Defendant Ridge, dated January 1, 2016, executed May 4, 2016, recorded as Instrument No. 2016-1457, Loving County Official Public Records, a copy of which is attached as **Exhibit "H"** (the "O. Cochran Lease").

- Oil and Gas Royalty Lease from Plaintiff Margaret Ann Crow to Defendant Ridge, dated January 1, 2016, executed April 25, 2016, recorded as Instrument No. 2016-1348, Loving County Official Public Records, a copy of which is attached as **Exhibit "I"** (the "Crow Lease").

- Oil and Gas Royalty Lease from Plaintiff Tony Scott Martin to Defendant Ridge, dated October 29, 2016, executed November 19, 2016, recorded as Instrument No. 2016-3925, Loving County Official Public Records, a copy of which is attached as **Exhibit "J"** (the "T. Martin Lease").

- Oil and Gas Royalty Lease from Plaintiff Phillip Blakely Martin to Defendant Ridge, dated October 29, 2016, executed October 31, 2016, recorded as Instrument No. 2016-3603, Loving County Official Public Records, a copy of which is attached as **Exhibit "K"** (the "P. Martin Lease").

- Oil and Gas Royalty Lease from Valerie Louise Martin (predecessor-in-interest of Plaintiff Estate of Valerie Louise Martin) to Defendant Ridge, dated September 16, 2016, executed October 31, 2016, recorded as Instrument No. 2016-3602, Loving County Official Public Records, a copy of which is attached as **Exhibit "L"** (the "V. Martin Lease").

- Oil and Gas Royalty Lease from Plaintiff Eddie Lou Hix Kester to Defendant Ridge, dated January 1, 2016, executed February 26, 2016, recorded as Instrument No. 1155 at Volume 494, Page 644, Martin County Official Public Records, a copy of which is attached as **Exhibit "M"** (the "Original Kester Lease"), together with a Correction Oil and Gas Royalty Lease from Plaintiff Eddie Lou Hix Kester to Defendant Ridge, dated January 1, 2016, executed April 25, 2016, recorded as Instrument No. 1920 at Volume 501, Page 78, Martin County Official Public Records, a copy of which is attached as **Exhibit "N"** (collectively the "Kester Leases").

- Oil and Gas Royalty Lease from Daisy Williams, as Trustee of the Ben F. Williams Jr. Living Trust (predecessor-in-interest to Plaintiffs Elizabeth W. Boyd, Diane W. Belcher, Katherine W. Braun, and Ben F. Williams III, Co-Trustees of the Ben F. Williams Jr. Living Trust), to Defendant Ridge, dated January 1, 2016, executed February 23, 2016, recorded as Instrument No. 1156 at Volume 494, Page 648, Martin County Official Public Records, a copy of which is attached as **Exhibit "O"** (the "Original Williams Lease"), together with a Correction Oil and Gas Royalty Lease from Daisy Williams, as Trustee of the Ben F. William Jr. Living Trust (predecessor-in-interest to Plaintiffs

Elizabeth W. Boyd, Diane W. Belcher, Katherine W. Braun, and Ben F. Williams III, Co-Trustees of the Ben F. Williams Jr. Living Trust), to Defendant Ridge, dated January 1, 2016, executed May 17, 2016, recorded as Instrument No. 2210 at Volume 504, Page 322, Martin County Official Public Records, a copy of which is attached as **Exhibit "P"** (collectively the "Williams Leases").

- Oil and Gas Royalty Lease from Plaintiff Whitaker B. Irvin Sr., Trustee of the Teresa W. Irvin Revocable Trust, to Defendant Ridge, dated January 1, 2016, executed March 9, 2016, recorded as Instrument No. 1154 at Volume 494, Page 640, Martin County Official Public Records, a copy of which is attached as **Exhibit "Q"** (the "Original Irvin Lease") together with a Correction Oil and Gas Royalty Lease from Plaintiff Whitaker B. Irvin Sr., Trustee of the Teresa W. Irvin Revocable Trust, to Defendant Ridge, dated January 1, 2016, executed April 15, 2016, recorded as Instrument No. 1618 at Volume 498, Page 391, Martin County Official Public Records, a copy of which is attached as **Exhibit "R"** (collectively the "Irvin Leases").

- Oil and Gas Royalty Lease from Plaintiff Monya S. Cunningham, Trustee of the Monya S. Cunningham Revocable Living Trust, to Defendant Ridge, dated June 9, 2016, executed August 29, 2016, recorded as Instrument No. 2016-25474, Midland County Real Property Records, a copy of which is attached as **Exhibit "S"** (the "M. Cunningham Trust Lease")

- Oil and Gas Royalty Lease from Plaintiff Karen C. Ragno, as Trustee of the 2009 Cunningham Revocable Trust, to Defendant Ridge, dated June 9, 2016, executed August 29, 2016, recorded as Instrument No. 2016-26037, Midland

County Real Property Records, a copy of which is attached as **Exhibit "T"** (the "2009 Cunningham Trust Lease").

- Oil and Gas Royalty Lease from Plaintiff Deborah Dyer Gutting to Defendant Ridge, dated February 1, 2016, executed May 20, 2016, recorded as Instrument No. 16-06817 at Volume 1277, Page 205, Reeves County Real Property Records, and as Instrument No. 2016-143353, Pecos County Real Property Records, a copy of which is attached as **Exhibit "U"** (the "Gutting Lease").

- Oil and Gas Royalty Lease from Plaintiff Thomas A. Beckham, Trustee of the Beckham Family Trust, to Defendant Ridge, dated May 1, 2016, executed June 29, 2016, recorded as Instrument No. 16-08931 at Volume 1293, Page 31, Reeves County Real Property Records, a copy of which is attached as **Exhibit "V"** (the "Beckham Lease").

- Oil and Gas Royalty Lease from Plaintiff Judith Ellen Gerbase to Defendant Ridge, dated October 1, 2015, executed March 10, 2016, recorded as Instrument No. 166684 at Volume 964, Page 850, Upton County Official Public Records, a copy of which is attached as **Exhibit "W,"** together with a Correction Oil and Gas Royalty Lease from Plaintiff Judith Ellen Gerbase to Defendant Ridge, dated October 1, 2015, executed April 14, 2016, recorded as Instrument No. 166968 at Volume 967, Page 185, Upton County Official Public Records, a copy of which is attached as **Exhibit "X"** (the "Gerbase Leases").

- Oil and Gas Royalty Lease from Plaintiff George Andy Lasater to Defendant Ridge, dated October 1, 2015, executed March 11, 2016, recorded as Instrument No. 166685 at Volume 964, Page 853, Upton County Official Public Records,

a copy of which is attached as **Exhibit "Y,"** together with a Correction Oil and Gas Royalty Lease from Plaintiff George Andy Lasater to Defendant Ridge, dated October 1, 2015, executed April 12, 2016, recorded as Instrument No. 166966 at Volume 967, Page 179, Upton County Official Public Records, a copy of which is attached as **Exhibit "Z"** (the "Lasater Leases").

- Oil and Gas Royalty Lease from Plaintiff Ben Rex Ponder to Defendant Ridge, dated October 1, 2015, executed March 23, 2016, recorded as Instrument No. 166773 at Volume 965, Page 535, Upton County Official Public Records, a copy of which is attached as **Exhibit "AA,"** together with a Correction Oil and Gas Royalty Lease from Plaintiff Ben Rex Ponder to Defendant Ridge, dated October 1, 2015, executed May 24, 2016, recorded as Instrument No. 167381 at Volume 970, Page 623, Upton County Official Public Records, a copy of which is attached as **Exhibit "BB"** (the "Ben Ponder Leases").

- Oil and Gas Royalty Lease from Plaintiff Billie Jean Ponder to Defendant Ridge, dated October 1, 2015, executed March 14, 2016, recorded as Instrument No. 166687 at Volume 964, Page 859, Upton County Official Public Records, a copy of which is attached as **Exhibit "CC,"** together with a Correction Oil and Gas Royalty Lease from Plaintiff Billie Jean Ponder to Defendant Ridge, dated October 1, 2015, executed April 14, 2016, recorded as Instrument No. 166967 at Volume 967, Page 182, Upton County Official Public Records, a copy of which is attached as **Exhibit "DD"** (the "Billie Ponder Leases")

- Oil and Gas Royalty Lease from Plaintiff Penny Sue Posey to Defendant Ridge, dated October 1, 2015, executed March 22, 2016, recorded as Instrument No.

166937 at Volume 966, Page 734, Upton County Official Public Records, a copy of which is attached as **Exhibit "EE"** (the "Posey Lease").

- Oil and Gas Royalty Lease from Plaintiff Carolyn Taylor to Defendant Ridge, dated October 1, 2015, executed March 10, 2016, recorded as Instrument No. 166683 at Volume 964, Page 847, Upton County Official Public Records, a copy of which is attached as **Exhibit "FF,"** together with a Correction Oil and Gas Royalty Lease from Plaintiff Carolyn Taylor to Defendant Ridge, dated October 1, 2015, executed April 18, 2016, recorded as Instrument No. 167008 at Volume 967, Page 368, Upton County Official Public Records, a copy of which is attached as **Exhibit "GG"** (the "Taylor Leases").

70.     Defendant Ridge assigned the Oil and Gas Royalty Leases executed by the Plaintiffs in the instruments below:

- Partial Assignment of Oil and Gas Royalty Leases dated effective January 1, 2016, recorded as Instrument No. 16-2808, Andrews County Official Public Records, a copy of which is attached as **Exhibit "HH,"** in which Ridge partially assigned its interests in the Kuykendall Leases to Plains and Range.

- Partial Assignment of Oil and Gas Royalty Leases dated effective January 1, 2016, recorded as Instrument No. 2016-1573, Loving County Official Public Records, a copy of which is attached as **Exhibit "II,"** in which Ridge partially assigned its interests in the Crow, J. Cochran, and O. Cochran Leases to Plains and Range.

- Partial Assignment of Oil and Gas Royalty Leases dated effective October 29, 2016, recorded as Instrument No. 2018-0946, Loving County Official Public

Records, a copy of which is attached as **Exhibit "JJ,"** in which Ridge partially assigned its interests in the T. Martin, P. Martin, and V. Martin Leases to Plains and Range.

- Partial Assignment of Oil and Gas Royalty Leases dated effective January 1, 2016, recorded as Instrument No. 1389 at Volume 496, Page 521, Martin County Official Public Records, a copy of which is attached as **Exhibit "KK,"** in which Ridge partially assigned its interests in the Original Kester Lease, Original Williams Lease, and Original Irvin Lease to Plains and Range, together with a Correction Partial Assignment of Oil and Gas Royalty Leases dated effective January 1, 2016, recorded as Instrument No. 3169 at Volume 514, Page 443, Martin County Official Public Records, a copy of which is attached as **Exhibit "LL,"** in which Ridge partially assigned its interests in the Kester, Williams, and Irvin Leases to Plains and Range.

- Partial Assignment of Oil and Gas Royalty Leases dated effective June 9, 2016, recorded as Instrument No. 2017-2161, Midland County Real Property Records, a copy of which is attached as **Exhibit "MM,"** in which Ridge partially assigned its interests in the M. Cunningham Trust Lease and the 2009 Cunningham Trust Lease to Plains and Range.

- Partial Assignment of Oil and Gas Royalty Leases dated effective February 1, 2016, recorded as Instrument No. 16-09295 at Volume 1295, Page 574, Reeves County Real Property Records, a copy of which is attached as **Exhibit "NN,"** in which Ridge partially assigned its interests in the Gutting Lease to Plains and Range.

- Assignment of Oil and Gas Royalty Lease dated effective May 1, 2016, recorded as Instrument No. 16-11240 at Volume 1310, Page 583, Reeves County Real Property Records, a copy of which is attached as **Exhibit "OO,"** in which Ridge assigned all of its interests in the Beckham Lease to Plains and Range, together with a Partial Assignment of Oil and Gas Royalty Lease dated effective May 1, 2016, recorded as Instrument No. 17-10851 at Volume 1436, Page 448, Reeves County Real Property Records, a copy of which is attached as **Exhibit "PP,"** in which Plains partially assigned its interests in the Beckham Lease to Ridge.

- Partial Assignment of Oil and Gas Royalty Leases dated effective January 1, 2016, recorded as Instrument No. 167542 at Volume 971, Page 580, Upton County Official Public Records, a copy of which is attached as **Exhibit "QQ,"** in which Ridge partially assigned its interests in the Gerbase, Lasater, Ben Ponder, Billie Ponder, Posey, and Taylor Leases to Plains and Range, together with a Correction Partial Assignment of Oil and Gas Royalty Leases dated effective January 1, 2016, recorded as Instrument No. 167658 at Volume 972, Page 420, Upton County Official Public Records, a copy of which is attached as **Exhibit "RR,"** in which Ridge partially assigned its interests in the Gerbase, Lasater, Ben Ponder, Billie Ponder, Posey, and Taylor Leases to Plains and Range.

71. Upon information and belief, Defendants have notified operators producing on the lands described in one or more of the Royalty Leases of their interests under the Royalty Leases and have claimed and received proceeds of production from those operators.

## V.

### CAUSES OF ACTION

A.    **COUNT ONE:  FEDERAL SECURITIES LAW VIOLATIONS**
**15 U.S.C. § 78J AND 17 C.F.R. § 240.10B-5 (AGAINST RIDGE NATURAL RESOURCES, LLC, ESPUELA LAND AND MINERALS, LLC; AGAVE NATURAL RESOURCES, L.L.C.; CHRISTOPHER HAWA; AND CALVIN SMAJSTRLA)**

72.    Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

73.    Pursuant to 15 U.S.C. § 78j, the Securities & Exchange Commission (the "SEC") promulgated SEC Rule 10b-5, codified as 17 C.F.R. § 240.10b-5. Rule 10b-5(a) prohibits the employment of any "device, scheme or artifice to defraud" in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b-5(a). Rule 10b-5(b) prohibits the offer or sale of securities by making "any untrue statement of fact" or "omit[ting] to state any material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). Rule 10b-5(c) makes it unlawful to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(c).

74.    The "Oil and Gas Royalty Lease" is a security as defined by 15 U.S.C. § 78c(a)(10) because it comprises a "certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease."

75.    Defendants controlled each other, directly or indirectly, and engaged in their unlawful activities through or by means of each other, and they are each therefore jointly and severally liable under 15 U.S.C. §§ 78t(a) and (b).

76.    Defendants, through the false representations by Christopher Hawa and Calvin Smajstrla, which were acting on their own behalf and as the agents of Ridge, Espuela and Agave, (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of

material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in violation of 15 U.S.C. § 78j(b) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5). All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons.

77.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to send the fraudulent offer letters and proposed Oil and Gas Royalty Leases.

78.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of supporting the purpose of convincing Plaintiffs to assign or sell their royalty interests to Defendants by fraudulent means. If any Defendant did not have actual knowledge of the misrepresentations and omissions alleged herein, he or it was reckless in failing to obtain such knowledge by deliberately refraining from taking the steps necessary to discover whether those statements were false or misleading.

79.     As a result of Defendants' dissemination of materially false and misleading information and failure to disclose material facts, as set forth above, Plaintiffs assigned or sold their royalty interests to Defendants. Plaintiffs actually and justifiably relied on the materially false and misleading information provided by Defendants.

80. By virtue of the foregoing, Defendants have violated 15 U.S.C. § 78j and Rule 10b-5 promulgated thereunder.

81. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages.

82. Based upon Defendants' violations of Rule 10b-5 alleged herein, Plaintiffs are entitled to rescission of the Oil and Gas Royalty Leases, or in the alternative to damages, with interest accruing thereon at the legal rate.

83. Through the offer letter and the Oil and Gas Royalty Lease, Defendants intentionally and fraudulently misrepresented the nature of the proposed transaction. Consequently, Defendants are liable for punitive damages.

### B.    COUNT TWO:    DECLARATORY JUDGMENT

84. Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

85. A justiciable controversy exists between Plaintiffs and Defendants as to the validity and effect of the Royalty Leases, such controversy being real, substantial, and involving a genuine conflict of interests.

86. Plaintiffs request that the Court declare that the Royalty Leases are invalid, void, and of no force or effect on one or more of the following grounds:

   a.    The executive right corresponding to Plaintiffs' royalty interests had been severed or exercised at the time of the Royalty Leases. Consequently, Plaintiffs held no executive rights and, therefore, were not vested with the ability or authority to lease their royalty interests.

   b.    Plaintiffs owned no possessory interest or estate in the lands described in the Royalty Leases. A "lease," by its definition, consists of the transfer of the right to possession and occupation of property. For a lease to have legal

  effect, the object of a lease must be a possessory estate capable of occupation. A nonpossessory interest is not capable of being leased.

  c. Each Royalty Lease, read as a whole, is a lease, rather than a conveyance of royalty.

87. Alternatively, Plaintiffs request that the Court declare that Defendants are not authorized to commit waste and, therefore, are not authorized to consume produced oil and gas or the proceeds thereof, such production or proceeds being corpus that belongs to Plaintiffs.

88. Alternatively, Plaintiffs request that the property interest subject to the Royalty Leases is personal property consisting of produced oil and gas, rather than a real-property interest in oil and gas in place. In the event that the Court so declares, Plaintiffs further request that the Court declares that subsequent purchasers who acquire under Plaintiffs are not bound by the Royalty Leases because the burdens thereunder do not run with the land.

### C. COUNT THREE: FRAUDULENT MISREPRESENTATION

89. Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

90. In its communications with Plaintiffs, Defendants made material representations to Plaintiffs concerning the effect of the Royalty Leases.

91. The representations were false.

92. When Defendants made the representations, they knew the representations were false or made them recklessly without knowledge of their truth as a positive assertion.

93. Defendants made the representations with the intention that they should be acted upon by the Plaintiffs.

94. Plaintiffs acted in reliance upon the representations, and Plaintiffs have thereby suffered injury.

### D.   COUNT FOUR:      FRAUD BY NONDISCLOSURE

95.     Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

96.     Defendants failed to disclose facts to Plaintiffs. Defendants failed to disclose to Plaintiffs that their purpose and desired effect in obtaining the Royalty Leases was to acquire by conveyance a defeasible term interest in 75 percent of Plaintiffs' royalty.

97.     Defendants had a duty to disclose matters that were known to them and that they knew to be necessary to prevent their partial or ambiguous statement of the facts from being misleading. Additionally, Defendants had a duty to disclose facts basic to each transaction involving the Royalty Leases, because they knew that Plaintiffs, prior to execution of the Royalty Leases, were about to enter into the instruments under a mistake, and that Plaintiffs, because of their relationship with Defendants, the customs of the trade, or other objective circumstances, would reasonably expect a disclosure of those facts.

98.     The facts that Defendants failed to disclose were material.

99.     Defendants knew Plaintiffs were ignorant of the facts. Defendants were uniquely knowledgeable about the subject matter of the transaction, and Plaintiffs did not have an equal opportunity to discover the facts.

100.    Defendants were deliberately silent when they had a duty to speak.

101.    By failing to disclose the facts, Defendants intended to induce Plaintiffs to take some action or refrain from acting. Plaintiffs relied on the nondisclosure of Defendants. Plaintiffs were injured as a result of acting without that knowledge.

### F.   COUNT FIVE:  MISTAKE

102.    Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

103.     To the extent that the Royalty Leases are interpreted as conveyances of term royalty interests rather than the lease of a fee-simple determinable as occurs under a traditional oil-and-gas lease, the Plaintiffs were mistaken as to the effect of the Royalty Leases.

104.     The mistake is of so great a consequence that to enforce the Royalty Leases as conveyances of term royalty would be unconscionable.

105.     The mistake relates to a material feature of the Royalty Leases. The mistake was made regardless of the exercise of ordinary care by Plaintiffs.

106.     The parties can be placed in the same position they were in prior to the execution and delivery of the Royalty Leases.

### G.     COUNT SIX:        CONSPIRACY

107.     Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

108.     Defendants Ridge Natural Resources, LLC; Espuela Land and Minerals, LLC; Plains Natural Resources, LLC; Pueblo Resources, L.L.C. f/k/a Apache Resources, L.L.C.; Agave Natural Resources, L.L.C.; Range Royalty, LLC; Calvin Smajstrla; Matt Morgan; Christopher Hawa; and Wilson Hawa consist of two or more persons.

109.     In seeking to obtain the Royalty Leases on the same terms utilizing shared methods and forms, there was a meeting of the minds on the object or course of action.

110.     In their conduct, Defendants committed one or more unlawful, overt acts.

111.     Plaintiffs suffered damages as the proximate result of Defendants' acts.

### H.     COUNT SEVEN:   FRAUD IN A REAL ESTATE TRANSACTION

112.     Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

113.     Defendants made false representations of past or existing material facts.

114. The representations were made to Plaintiffs for the purpose of inducing them to enter into a contract and were relied upon by Plaintiffs in entering into the contracts.

115. Defendants made the false representations with actual awareness of the falsity thereof. Accordingly, Plaintiffs may recover exemplary damages under TEX. BUS. & COM. CODE § 27.01(c).

116. Each Defendant had actual awareness of the falsity of representations made by the other Defendants, failed to disclose the falsity of the representations to the Plaintiffs, and benefitted from the false representations.

117. Plaintiffs were damaged accordingly.

**I.**    **COUNT EIGHT:       NEGLIGENT MISREPRESENTATION**

118. Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

119. Defendants provided information to Plaintiffs in the course of their business, or in a transaction in which they had a pecuniary interest.

120. The information supplied was false.

121. Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

122. Plaintiffs justifiably relied on the information, and Plaintiffs suffered damages proximately caused by their reliance on the false information and were damaged thereby.

**J.**    **COUNT NINE: MONEY HAD AND RECEIVED**

123. To the extent that Defendants have received proceeds from production of oil and gas or any other money as a result of one or more of the Royalty Leases, Defendants received and hold money attributable to the interest claimed under such Royalty Leases.

124.   The money received by Defendants in equity and good conscience belongs to Plaintiffs.

125.   Plaintiffs seek compensatory damages accordingly.

**K.   COUNT TEN:       RESCISSION**

126.   Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

127.   To the extent that the Royalty Leases are interpreted to be valid conveyances of royalty interests, the Royalty Leases should be rescinded, cancelled, set aside, and extinguished.

128.   Sufficient grounds exist for rescission because the Royalty Leases were procured by fraud and mistake. Additionally, the Royalty Leases should be rescinded to avoid unjust enrichment of Defendants.

129.   Plaintiffs are ready to restore all consideration paid to Plaintiffs by Defendants so as to return Defendants to the position they were in before execution and delivery of the Royalty Leases. Rescission will not result in prejudice to Defendants.

**L.   COUNT ELEVEN:      CONSTRUCTIVE TRUST**

130.   Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

131.   In the event that rescission is denied, a constructive trust is an appropriate remedy.

132.   The actions of Defendants resulted in the breach of a special trust or fiduciary relationship or constituted actual fraud.

133.   Defendants have been unjustly enriched as a result of their actions.

134.   The unjust enrichment of Defendants can be traced to an identifiable *res* consisting of the property interest claimed under each of the Royalty Leases.

**M.   COUNT TWELVE:      TEXAS SECURITIES ACT**

135.   Plaintiffs incorporate the above-numbered paragraphs as if fully set forth herein.

136.    The purchases of the Royalty Leases are purchases of securities under TEX. CIV. CODE ANN. § 581-4(A) in that they comprise a "certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title."

137.    Defendants issued and purchased these securities to and from residents of the State of Texas and other states, and are therefore subject to the Texas Securities Act, TEX. CIV. CODE Ann. § 581, *et seq.*

138.    Defendants and/or their agents violated § 581-33(A)(2) of the Texas Securities Act in that they offered and purchased securities by means of untrue statements of material fact and/or by the omission to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and Plaintiffs were damaged thereby.

139.    Additionally, and in the alternative, Defendants violated §581-33(F)(2) of the Texas Securities Act in that they materially aided the purchasers of the securities at issue with an intent to deceive or defraud or with reckless disregard for the truth or the law when offering and describing the securities at issue to Plaintiff. Defendants rendered assistance in the face of a perceived risk that their assistance would facilitate untruthful or unlawful activity by the primary violator(s) and each possessed a general awareness that its role was part of an overall activity that was improper.

140.    Additionally, and in the alternative, Defendants, by virtue of their position and relationships, were control persons of the purchasers of securities, within the meaning of § 581-33(F)(1) of the Texas Securities Act as they had the power and influence to control the acts of others and exercised the same power and influence. As a consequence, Defendants are jointly and

severally liable for any violations of § 581-33(A)(2) of any other party associated with the Royalty Leases.

141.    As a result of these violations, and pursuant to § 581-33(D)(1) of the Texas Securities Act, Plaintiffs are entitled to have the above described transactions rescinded.

## VI.

### ATTORNEYS' FEES

142.    Because of the Defendants' acts, Plaintiffs have found it necessary to engage the undersigned, incur costs, and pay reasonable and necessary attorneys' fees.

143.    Under the Federal Securities laws, TEX. CIV. PRAC. & REM. CODE § 37.009, and § 581-33(D) of the Texas Securities Act, Plaintiffs are entitled to and seek such costs and reasonable attorneys' fees as are just and equitable.

## VII.

### JURY DEMAND

144.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs make their demand for trial by jury on all issues so triable.

## VIII.

### PRAYER FOR RELIEF

Plaintiffs respectfully pray that Defendants be cited to appear and answer herein as required by law and that, upon final trial, Plaintiffs have:

1.    Declaratory Judgment against Defendants as requested herein;

2.    Rescission of the Royalty Leases;

3.    Compensatory and exemplary damages;

4.    Mental-anguish damages;

5.      Costs of suit;

6.      Attorneys' fees;

7.      A constructive trust imposed upon the interests of Defendants;

8.      Pre-judgment and post-judgment interest at the highest lawful rate; and

9.      Such other and further relief, both at law and at equity, to which they may be justly

        entitled.

                                Respectfully submitted,

                                /s/ Charles W. Gameros, Jr., P.C.
                                Charles W. Gameros, Jr., P.C.
                                State Bar No. 00796596

                                **HOGE & GAMEROS, LLP**
                                6116 N. Central Expy., Suite 1400
                                Dallas, Texas   75206
                                Telephone:      (214) 765-6002
                                Telecopier:     (214) 559-4905
                                E-mail:         bgameros@legaltexas.com

                                **ATTORNEYS FOR PLAINTIFFS**